UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

THEODORE J. THOMPSON,

    Plaintiff,

v.                                                 Case No. 3:17cv132-LC-HTC

SHERIFF MICHAEL ADKINSON,
Officially; DR. SHEPPARD, M.D.,
Officially; and NURSE TILLER,
Individually and Officially,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se* and *in forma pauperis*, brought this action under 42 U.S.C. § 1983. The matter is before the Court on Defendant Michael Adkinson's Motion to Dismiss Plaintiff's second amended complaint (ECF Doc. 36) and Plaintiff's response (ECF Doc. 41). From a review of the second amended complaint, Defendant Adkinson's motion and Plaintiff's response, the undersigned finds Defendant Adkinson's motion should be granted in part and denied in part, as set forth below.

Case No. 3:17cv132-LC-HTC

I. BACKGROUND

At the time of the events giving rise to Plaintiff's second amended complaint, Plaintiff was an inmate confined at the Walton County Jail. Plaintiff names three Defendants in his second amended complaint -- Michael A. Adkinson, Walton County Sheriff; Dr. J. Sheppard, medical doctor at the Walton County Jail; and Nurse Tiller, medication nurse at the Walton County Jail.[1] Plaintiff's claims stem from the discontinuation of anti-psychotic medication by officials at the Walton County Jail.

Specifically, Plaintiff alleges he was prescribed various anti-psychotic medications while at the Escambia County Jail. He then was transferred to the Walton County Jail. Although Plaintiff initially received the prescribed medications upon transfer to the Walton County Jail, he says Nurse Tiller discontinued them shortly after his transfer, accusing him of "cheeking meds" for five days.[2] ECF Doc. 32 at p. 6. Plaintiff says he objected to the discontinuation of medication and that Nurse Tiller "became irratic [*sic*] and stated 'that's it buddy, you're done, no more

---

[1] Plaintiff initially named Walton County as a defendant in his second amended complaint, but he voluntarily dismissed the County from the suit. *See* ECF Docs. 39, 42.

[2] According to Plaintiff, he had been returned to the Escambia County Jail for a psychiatric appointment and court appearance and was not confined at the Walton County Jail during the five-day period Nurse Tiller referenced.

Case No. 3:17cv132-LC-HTC

meds for you.'" ECF Doc. 32 at p. 6.  He says other "medication nurses" advised he could not receive any more "psych meds because it was Walton County's policy that if you were suspected of 'cheeking meds,' they would be discontinued."[3]  ECF Doc. 32 at p. 7.

Plaintiff maintains "[t]here was no psychiatrist working on duty at the Walton County Jail, and plaintiff's doctor at Escambia County did not order any discontinuance of plaintiff's meds." ECF Doc. 32 at p. 7.  "After some twelve (12) straight days of suffering the return of the voices in his head, and being over-taken by the erges [sic] to harm himself, on 1-4-2017, plaintiff approached two (2) unknown jail officers at approx. 2:30 am, and requested to be placed in a suicide-watch cell for his own protection against harming himself." ECF Doc. 32 at p. 7.  "The officers complied, and at approx. 2:40 am the plaintiff was stripped naked and placed in suicidal watch cell #10, one of the two strip-cells in the booking area." ECF Doc. 32 at p. 7.

"Unbelievably, plaintiff found a used razor blade in the cell #10." ECF Doc. 32 at p. 7.  "At approx. 6 am to 6:30 pm on 1-4-17, Nurse Tiller, Walton County med nurse that ordered the discontinuance of plaintiff's life-saving medications 12

---

[3] "Cheeking meds" is a slang term used to describe the act of keeping medications in your cheeks, rather than swallowing them.  ECF Doc. 36, p. 7, fn 1.

days earlier, appeared at suicide cell number #10 and began shouting a flurry of questions through the door at plaintiff." ECF Doc. 32 at p. 7. "Plaintiff had completely relapsed, and failed to respond due to fear and confusion. The illness was pounding down on plaintiff's ability to cope." ECF Doc. 32 at p. 7. "After discovering the single-edge razor blade in the window of cell #10, Plaintiff's voices erged [sic] him to hide it under the floor matt [sic]." ECF Doc. 32 at p. 8. "Unfortunately, at 9:30 pm on 1-4-17, the hullicinating [sic] voices successfully demanded plaintiff to retrieve the razor blade from under the mattress and end the pain and suffering by suicide." ECF Doc. 32 at p. 8. "Plaintiff used the razor blade and sliced his left wrist fifteen (15) times, causing a substantial amount of blood loss and severe pain and suffering." ECF Doc. 32 at p. 8.

Plaintiff alleges that, "[w]hile acting out with the razor blade crying and sobbing, plaintiff was observed by two unknown named Walton County Jail booking officers and verbally ordered to drop the blade and sit on the floor." ECF Doc. 32 at p. 8. "Plaintiff complied without resistance, or further incident." ECF Doc. 32 at p. 8. "The first responding medical staff member was in fact the 'Med. Nurse Tiller, Walton County Med Nurse' that discontinued plaintiff's psych meds on 12-23-16." ECF Doc. 32 at p. 8. "Eventually," Plaintiff avers, "some 10 to 12 custody and medical staff was present in and around the cell #10 while the nurse treated the

plaintiff's bleeding wounds." ECF Doc. 32 at p. 8. "Med Nurse Tiller, Walton County nurse, laughed and joked with attending staff about discontinuing plaintiff's meds, stating, 'she had stoped [*sic*] the meds about a week ago due to Walton County's policy with cheeking meds. However, it was two weeks ago." ECF Doc. 32 at p. 8.

"Following treatment for his lacerations, Plaintiff was placed in the suicide cell #9." ECF Doc. 32 at p. 8. "On 1-5-17, Plaintiff was transported to the Escambia County Jail for another court appearance." ECF Doc. 32 at pp. 8-9. "While at the Escambia County Jail on 1-5-17, Plaintiff was placed on suicide watch and given one dose of his regular prescribed medications. However, at 1:00 am on 1-6-17, Plaintiff was transported back to the Walton County Jail and placed in suicide watch cell #10 again." ECF Doc. 32 at p. 9. "On 1-6-17, at approx. 10:00 am, plaintiff received a visit from Dr. J. Sheppard, Walton County medical doctor, who displayed a foul and negative attitude towards plaintiff. Plaintiff verbally challenged the aging medical doctor's lack of authority to suddenly stop giving him his prescribed psychiatric medication." ECF Doc. 32 at p. 9. "Dr. J. Sheppard, the medical doctor snapped, 'It is our policy here at Walton county to discontinue meds when someone trys [*sic*] to cheek them.'" ECF Doc. 32 at p. 9. "Plaintiff stated to the doctor, 'You're not a psychiatrist, and my psychiatrist did not tell anyone to stop my

medication.'" ECF Doc. 32 at p. 9. "This doctor then stated, 'we don't have any mental health staff here at Walton, we just give you what Escambia's psych prescribes. But when you mess with our nurses, we can stop them per 'our policy.'" ECF Doc. 32 at p. 9. "The doctor added, 'apparently you're not ready to come off suicide watch, so you'll stay here.'" ECF Doc. 32 at p. 9.

"Dr. J. Sheppard, the Walton County medical doctor then ordered plaintiff moved to the medical section to cell #1 and placed on a 7x suicide watch, but refused and failed to allow meds." ECF Doc. 32 at p. 9. "It was not until January 11, 2017, nineteen (19) days after the discontinuance of plaintiff's psychiatric medications by Walton County and its medical staff, that plaintiff was restarted on his regular prescribed medication. And even then, plaintiff was denied the Seroquil [sic] prescribed for the am med pass." ECF Doc. 32 at p. 10. "Subsequently, on 1-18-2017, plaintiff was moved from suicide watch cell #1, back into the general population." ECF Doc. 32 at p. 10. "On January 31, 2017, plaintiff was finally restarted back on the morning Seroquil [*sic*]." ECF Doc. 32 at p. 10. "On February 2, 2017, Plaintiff was transferred back to the Escambia County Jail to remain during the pending of the criminal matter before the County Circuit Court." ECF Doc. 32 at p. 10.

Plaintiff alleges that "Sheriff Michael A. Adkinson, in his official capacity, as the Chief Jailer for the County of Walton, while acting under the color of state law, used his badge of authority to unlawfully hold and execute an unwritten policy, practice, and/or custom to unlawfull[y] deny and interfere with plaintiff medical treatment once prescribed." ECF Doc. 32 at p. 11. "This unlawful policy and/or practice by Sheriff Michael A. Adkinson," Plaintiff avers, "did cause a wanton infliction of pain and suffering, and an intentional and negligent infliction of emotional distress." ECF Doc. 32 at p. 11. Plaintiff further alleges "[t]he unlawful acts and omissions of each of these named defendants while using their badge of authority and acting under the color of state law, with a deliberate indifference to the plaintiff's serious medical needs caused severe harm and a shock to plaintiff's conscience." ECF Doc. 32 at p. 12. Plaintiff asserts a Fourteenth Amendment due process claim, as well as state law claims for intentional and negligent infliction of emotional distress and professional negligence. He seeks $2,000,000 in compensatory and $5,000,000 in punitive damages.

II. DISCUSSION

A. Standard of Review

In considering a motion to dismiss for failure to state a claim, the court accepts all factual allegations in the complaint as true and evaluates all reasonable inferences

derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994). There are a few exceptions to this rule, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice. 5B Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1357 (2008). Nevertheless, only well-pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff. *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992); *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). Mere "labels and conclusions" are not accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (noting courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (explaining that conclusory allegations are not entitled to a presumption of truth).

As the Supreme Court reiterated in *Iqbal*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. at 678. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *Id.* The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555 – that is, to "nudge[] the[] claim[] across the line from conceivable to plausible[.]," *id.* at 570.

In addition to the pleading requirements of *Twombly* and *Iqbal*, a plaintiff's *pro se* status must be considered when evaluating the sufficiency of a complaint. "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Yet, any leniency cannot serve as a substitute for pleading a proper cause of action. *See Odion v. Google Inc.*, 628 F. App'x 635, 637 (11th Cir. 2015) (recognizing that although courts must show leniency to *pro se* litigants, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action") (internal quotation marks omitted).

B. Plaintiff's Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that "some person, acting under color of state law, deprived plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States." *Blanton v. Griel Mem'l Psychiatric Hosp.*, 758 F.2d 1540, 1542 (11th Cir. 1985) (internal marks omitted); 42 U.S.C. § 1983. Here, Plaintiff complains of deliberate indifference to a serious medical need in violation of the Fourteenth Amendment's due process clause.[4] With "regard to providing pretrial detainees with such basic necessities as food, living space, and medical care[,] the minimum standard allowed by the due process clause is the same as that allowed by the [E]ighth [A]mendment for convicted persons." *Id.* at 1574. "Medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' Mere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (internal citations omitted).

To state a claim of deliberate indifference under the Eighth Amendment, a prisoner must allege three (3) elements. First, a plaintiff must allege "an objectively

---

[4] Because Plaintiff appears to have been a pretrial detainee at the time of the events of which he complains, the Fourteenth Amendment, rather than the Eighth Amendment applies. *See, e.g., Hamm v. DeKIalb Cty.*, 774 F.2d 1567 (11th Cir. 1985).

Case No. 3:17cv132-LC-HTC

serious medical need" so grave that, "if left unattended, [it] poses a substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotation marks, alterations, and citations omitted). "[A] serious medical need is . . . one . . . diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal marks omitted).

The second element requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor*, 221 F.3d at 1258. Thus, a plaintiff must allege that the public official acted with an attitude of 'deliberate indifference.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). Deliberate indifference is established only when the plaintiff demonstrates the official knew of and disregarded an excessive risk to his health or safety; in other words, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official's response must have been so inadequate as to "constitute an unnecessary and wanton infliction of pain" and not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258. Notably, where the inmate received medical

attention and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris*, 941 F.2d at 1507 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989)); *see also Woody v. Cronic*, 401 F. App'x. 509, 512 (11th Cir. 2010) (unpublished opinion) ("Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference."). Indeed, a difference of opinion over matters of medical judgment does not give rise to a constitutional claim. *Harris*, 941 F.2d at 1505; *Waldrop*, 871 F.2d at 1033; *Murrell v. Bennett*, 615 F.2d 306, 310 n.4 (5th Cir. 1980).[5]

To satisfy the final element of an Eighth Amendment claim for deprivation of medical care, a plaintiff must allege that the official's deliberate indifference caused his injury. *Taylor*, 221 F.3d at 1258; *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009) (reiterating the elements of an Eighth Amendment claim).

Here, Plaintiff has alleged facts to satisfy each element of a claim for deliberate indifference to a serious medical need, at least at the motion to dismiss stage. First, Plaintiff has alleged a medical or mental condition so serious that, if

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.
Case No. 3:17cv132-LC-HTC

left unattended by an absence of medication, it poses a substantial risk of serious harm. Namely, Plaintiff alleges that he was on psychiatric mediation and that after being denied the mediation, he asked to be placed on suicide watch and then did proceed to cut his wrists with a razor blade. Second, he has alleged facts from which, particularly when construed in the light most favorable to him, a reasonable juror could find Defendant Adkinson acted with deliberate indifference in implementing, or at least enforcing, a policy of discontinuing medication upon suspicion of "cheeking" without regard to the potential effects.[6] Finally, Plaintiff has adequately alleged that such policy caused his injury. Defendant Adkinson's motion to dismiss Plaintiff's § 1983 claim should be denied as Plaintiff has stated a claim for violation of the Fourteenth Amendment.[7]

---

[6] Because Plaintiff sued Defendant Adkinson in his official capacity as Sheriff of Walton County, Plaintiff must allege a custom or policy that constituted deliberate indifference to his constitutional rights. A suit against a person in his official capacity is to be treated as a suit against the entity the person represents. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Faulkner v. Monroe Cty. Sheriff's Dep't*, 523 F. App'x 696, 701 (11th Cir. 2013). As the Supreme Court explained, "a governmental entity is liable under § 1983 only when the entity itself is a '"moving force"' behind the deprivation; thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Graham*, 473 U.S. at 166 (internal citations omitted). Hence, "[t]o hold a [governmental entity] liable, a plaintiff must show that (1) his constitutional rights were violated; (2) the [governmental entity] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Faulkner*, 523 F. App'x at 701 (internal marks omitted).

[7] Defendant Adkinson requests not only that Plaintiff's claims against him be dismissed, but also that Plaintiff's official capacity claims against Defendants Sheppard and Tiller be dismissed. Neither Sheppard nor Tiller has appeared in the action. Moreover, Defendant Adkinson does not

Case No. 3:17cv132-LC-HTC

Page 14 of 17

Turning to Plaintiff's state law claims, Defendant Adkinson contends Plaintiff failed to plead satisfaction of pre-suit notice requirements with regard to his tort claims of intentional infliction of emotional distress and professional negligence, requiring dismissal of such claims. Adkinson also argues Plaintiff has failed to state a claim upon which relief can be granted for intentional or negligent infliction of emotional distress.

With respect to the tort claim notice requirements, as Defendant Adkinson explains in his motion, to trigger Florida's limited waiver of sovereign immunity for claims against governmental officials, a plaintiff must satisfy the pre-suit notice requirements set forth in § 768.28(6), Fla. Stat. In fact, the "statute expressly precludes the action unless a written claim is first presented to the appropriate agency." *Maynard v. State, Dep't of Corr.*, 864 So. 2d 1232, 1233 (Fla. Dist. Ct. App. 2004) (citing § 768.28(6)(a)). "The presuit notice requirement is a condition precedent, *see* section 768.28(6)(b), which serves the purpose of giving the appropriate entities an opportunity to investigate and time to respond." *Id.* at 1233-34. "And as an aspect of the sovereign immunity waiver, the section 768.28(6)(a) notice provision is strictly construed, with strict compliance being required." *Id.* at

---

have standing to seek relief on their behalves. To the extent Defendant Adkinson moves for dismissal of Plaintiff's claims against Sheppard and Tiller, his motion should be denied.
Case No. 3:17cv132-LC-HTC

1234. Because Plaintiff failed to plead satisfaction of the pre-suit notice requirement, even after Defendant Adkinson raised the issue in his motion to dismiss, Plaintiff's state law tort claims of intentional infliction of emotional distress and professional negligence should be dismissed.[8]

Plaintiff's claim of negligent infliction of emotional distress is subject to dismissal on the additional ground that Plaintiff did not allege each of the elements of such a claim. In order to sustain a claim of negligent infliction of emotional distress under Florida law, a plaintiff must allege that he (1) suffered a physical injury; (2) caused by psychological trauma; (3) through an event causing negligent injury to another person in which the plaintiff was somehow involved; and (4) plaintiff had "[a] close personal relationship to the directly injured person." *Elliott v. Elliott*, 58 So. 3d 878, 881 (Fla. 1st DCA 2011) (emphasis removed). Plaintiff has set forth no such allegations, instead complaining of an event through which he alone allegedly was injured. This claim, thus, should be dismissed.

Accordingly, it is respectfully RECOMMENDED:

1. That Defendant Michael Adkinson's Motion to Dismiss (ECF Doc. 36) be

---

[8] In response to Adkinson's motion, Plaintiff addressed only his Fourteenth Amendment deliberate indifference claim. Also, it should be noted that Plaintiff characterized his negligence claim as "professional negligence." To the extent Plaintiff intended to assert something other than medical negligence, which requires satisfaction of the pre-suit notice requirement, he may replead the claim, as the dismissal is without prejudice.

Case No. 3:17cv132-LC-HTC

GRANTED in part and DENIED in part.

2. That Plaintiff's state law claims against Defendant Adkinson for intentional and negligent infliction of emotional distress and professional negligence be dismissed WITHOUT PREJUDICE for failure to state a claim upon which relief can be granted and failure to comply with conditions precedent.

3. That Plaintiff be allowed to proceed with his § 1983 claim against Defendant Adkinson for violation of his Fourteenth Amendment rights.

4. That Defendant Adkinson be required to answer the second amended complaint within twenty (20) days of the date of the order adopting this Report and Recommendation.

At Pensacola, Florida this 9th day of April, 2019.

*/s/ Hope Thai Cannon*
**HOPE T. CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.**