UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

THEODORE J. THOMPSON,

     Plaintiff,

v.                                        Case No. 3:17cv132-LC-HTC

WALTON COUNTY SHERIFF MICHAEL
A. ADKINSON and NURSE TILLER,

     Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Theodore J. Thompson, proceeding *pro se,* brings an action under 42 U.S.C. § 1983 alleging that Defendants Sheriff Adkinson of Walton County and Nurse Tiller at the Walton County Jail were deliberately indifferent to Thompson's serious medical needs in violation of the Fourteenth Amendment and were grossly negligent in providing medical care to Thompson in violation of Florida law.[1] ECF Doc. 67 (Third Amended Complaint). Thompson's claims are based on the withholding of psychiatric medications.

_____

[1] Plaintiff was an inmate of the Escambia County Jail at the time he filed this action, but is currently not incarcerated.

The Sheriff has filed a motion for summary judgment (ECF Doc. 80) and Thompson has filed a response in opposition (ECF Doc. 101). The motion is thus ripe for decision and the matter has been referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).

After careful consideration of the motion, response and the record, the undersigned respectfully recommends that the motion be GRANTED as Thompson has failed to exhaust his administrative remedies.[2] Additionally, the undersigned recommends that Thompson's claims against Tiller be dismissed pursuant to Federal Rule of Civil Procedure 4(m) for failure to effect timely service. There being no other defendants to this action, the undersigned further recommends that the case be closed.

## I.    SUMMARY OF THE FACTS

At the time Thompson filed this action in 2017, Plaintiff was an inmate at the Escambia County Jail ("ECJ"), where he had also been in 2016 prior to the events giving rise to this action. ECF Doc. 101 at 4-6. The events giving rise to this action, however, occurred at the Walton County Jail ("WCJ"), where Thompson was incarcerated from November 22, 2016, until February 2, 2017. *Id.*

---

[2] Because the undersigned finds that failure to exhaust bars this action, the undersigned does not independently address the merits of the gross negligence claim, but does address the supervisory liability claim.

Thompson sues Sheriff Adkinson and Nurse Tiller for Nurse Tiller's conduct in discontinuing Thompson's psychiatric medications, which he had received while he was at ECJ. *Id.* at 5. According to Thompson, Nurse Tiller falsely accused him of "cheeking" his medications.[3] *Id.* at 8-9. According to Thompson, the real reason Tiller stopping his medication was that he refused to sell or trade some of his medications with another inmate, Red, who Thompson claims was close to Tiller. *Id.*

Despite filing several grievances, Thompson went without his medication until January 3, 2017. *Id.* at 11. On January 4, 2017, Thompson attempted to commit suicide by cutting his wrist with a single-edge razor blade.[4] ECF Doc. 67 at 6-7. Thompson alleges that the suicide attempt was brought on by hallucinations he was getting as a result of not being on his medications. *Id.* On January 11, 2017, Thompson was restarted on his medications, and on February 2, 2017, Thompson was transferred back to ECJ. *Id.* at 8.

As relief, Thompson seeks compensatory damages of $2,000,000.00 and punitive damages of $5,000,000.00 to $7,000,000.00 from the Defendants. *Id.* at 12.

---

[3] As Thompson explained in his deposition, "cheeking meds" means "you hid medication somewhere in your mouth and don't swallow it for the purpose of saving it for whatever reason." ECF Doc. 81-1 at 21 (depo p. 51, lines 20-25).

[4] Thompson insists that the "fifteen (15) lacerations to his left wrist . . . all are not superficial. There was also a substantial loss of blood." The Incident Report and the records, however, indicate that Thompson was bandaged, but did not need to be transported to the Emergency room for further treatment. ECF Doc. 81-11.

## II.    EXHAUSTION

The Sheriff raises failure to exhaust as one ground of his motion for summary judgment.[5]  ECF Doc. 80 at 18-19.  The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion of all available administrative remedies is a mandatory precondition to suit.  *See Booth v. Churner*, 532 U.S. 731, 739 (2001).

The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both.  *See Booth*, 532 U.S. at 734, 741.  The requirement is not subject to waiver by a court or futility or inadequacy exceptions. *See id.* at 741 n.6.

Moreover, the PLRA requires "proper exhaustion" so that the agency has an opportunity to address the issues on the merits.  *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006); *see also id.* at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The

---

[5] The Sheriff also raised failure to exhaust as a defense in his Answer.  ECF Doc. 70 at 6.

prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones v. Bock*, 549 U.S. 199, 204 (2007).

A court must dismiss an action if satisfied the inmate failed to properly exhaust his available administrative remedies before filing suit. *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000).

### A. Application Of The Exhaustion Requirement To Thompson

In his response, Thompson does not argue that he exhausted available remedies. Instead, he argues that the exhaustion requirement does not apply to him because at the time he filed his third amended complaint, which is the operative pleading, Thompson was no longer a prisoner. ECF Doc. 101 at 25. Thompson's argument is expressly foreclosed by Eleventh Circuit precedent.

The Eleventh Circuit addressed this very issue in *Harris v. Garner*, 216 F.3d 970, 980 (11th Cir. 2000). In that case, the Eleventh Circuit found that the plaintiffs' statuses as of the filing of the initial complaint determined the applicability of the PLRA to plaintiffs' claims. Thus, because the plaintiffs in *Harris* had filed their complaint when they were prisoners, the action was subject to the PLRA. *Id.* at 972.

Although the *Harris* court addressed the issue of whether section 1997e(e)[6] of the PLRA applies if plaintiffs are no longer incarcerated at the time a judgment is entered, the holding in *Harris* is equally applicable here. Like Thompson, the plaintiffs in *Harris* were incarcerated when they filed their suit.[7] Also, like Thompson, the plaintiffs in *Harris* were released from incarceration prior to the termination of the action. The plaintiffs amended their complaint to indicate that they were no longer prisoners subject to the PLRA's requirements (and thus no longer subject to the physical injury requirement).[8] *Id.* The Eleventh Circuit, however, held that the filing date of the amendment could not overcome the requirements of the PLRA.

As the Court explained:

> The reason such an amendment or supplement makes no difference is that ... the confinement status of the plaintiffs at any time after the lawsuit is filed is beside the point. The status that counts, and the only status that counts, for purposes of section 1997e(e) is whether the

---

[6] Under Section 1997e(e), "no Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 28 U.S.C. § 1997e(e).

[7] *Harris* involves a suit by eleven (11) inmates of a Georgia prison claiming their constitutional rights had been violated during a prison "shakedown". *Harris*, 216 F.3d at 971. By the time the district court entered judgment, six (6) of the inmates had been released. The district judge nonetheless held that those released inmates were not entitled to monetary relief under the PLRA because they had no physical injury. *Id.* at 974.

[8] In its opinion, the Eleventh Circuit noted a discrepancy between the panel's initial decision, which determined that there was an amendment, and the district court's determination that there had been only a supplement and not an amendment. Regardless, the Eleventh Circuit held that even had there been an amendment, the amendment would have no bearing because the plaintiffs' statuses as prisoners is determined at the time of filing suit. *Harris,* 216 F.3d at 980.

> plaintiff was a 'prisoner confined in a jail, prison, or other correctional
> facility' at the time the federal civil action was 'brought,' i.e., when it
> was filed. It is an undisputed historical fact that all of these plaintiffs
> were confined in a Georgia prison or correctional facility at the time
> their complaint was filed. No amendment of supplement to a pleading
> can change a historical fact, and the [amended complaint] in question
> did not purport to do so.

*Id.* at 981. Thus, the Eleventh Circuit affirmed the district court's dismissal of

plaintiffs' monetary claims (including those of the released inmates) as being barred

under 1997e(e), but remanded the case for an entry of dismissal without prejudice

as to the released inmates. *See id*. at 985.

Thompson filed this suit on February 13, 2017. Doc. 1 at 2, 17. It is

undisputed that at that time he was incarcerated at ECJ, and remained incarcerated

there until at least August of 2017. *See* ECF Doc. 9 at 3 (envelope showing that ECF

Doc. 9 was mailed by Thompson from ECJ on August 25, 2017). On September 29,

2017, the Court received a change of address form for Thompson, indicating he had

been released from incarceration. ECF Doc. 13. Thompson filed his third amended

complaint on August 29, 2019. ECF Doc. 67.

Because Thompson was a prisoner incarcerated at the ECJ when he filed this

action, he was required to exhaust the remedies available to him before filing his

complaint. In other words, the fact that Thompson filed his third amended complaint

after he was released does not excuse Plaintiff's failure to exhaust his administrative

remedies before filing the initial complaint as required by the PLRA.  *See Harris*, 216 F.3d at 980.

Similarly, the undersigned could have recommended a dismissal, instead of revoking Thompson's *in forma pauperis* status, when it discovered that Thompson had failed to disclose his complete litigation history, which included over 37 other suits filed across the country and at least six (6) cases which qualified as a "strike" under section 1915(g) of the PLRA.  ECF Doc. 94.  Like the exhaustion requirement, the PLRA's 3-strike rule (28 U.S.C. 1915(g)) applied to Thompson because he was a prisoner when he filed this action regardless of his later change in status.  *See id.; Harris v. City of New York,* 607 F.3d 18, 22 (2d Cir. 2010) (applying § 1915(g) to plaintiff even though plaintiff had been released after the complaint was filed).

Although the Court had the discretion to allow Thompson to proceed by paying the entire filing fee, the Court does not have the discretion to waive the exhaustion requirement.  *See Mathews v. Fed. Bureau of Invest.*, 251 F.Supp. 3d 257, 264 (D.C. Cir. 2017) (holding that the better procedure is to revoke a disqualified prisoner's IFP status and order that the filing fee be paid within thirty days); *see Barnes v Jones*, 2018 WL 178902 *2 (N.D. Fla. March 28, 2018) ("The Supreme Court has held that 'failure to exhaust' is an affirmative defense under the PLRA, but the exhaustion requirement of § 1997e(a) is a mandatory, pre-condition to suit and there is no discretion to waive this requirement or provide continuances

of prisoner litigation in the event that a claim has not been exhausted prior to filing.")
(internal citations omitted).

Also, the fact that Plaintiff was transferred to ECJ and complained about
conduct at WCJ makes no difference. *See, e.g.*, *Miller v. Pryor*, 315 F. App'x 149,
150 (11th Cir. 2008) (even when transferred to another facility, prisoners must file
grievances with the original facility to exhaust administrative remedies.); *Prickett v.
Lawson*, 2008 WL 5046063, at *2 (S.D. Ga. Nov. 24, 2008) (collecting cases
illustrating that the transfer of a prisoner from the facility where the grievance
subject arose to another facility does not excuse the prisoner from complying with
the first facility's exhaustion requirement).

### B. Thompson Did Not Exhaust His Administrative Remedies

Having determined that the exhaustion requirement applies to Thompson, the
undersigned must determine whether Thompson exhausted his remedies.  In *Jones
v. Brock, supra*, the Supreme Court held that "to properly exhaust administrative
remedies prisoners must complete the administrative review process in accordance
with the applicable procedural rules -- rules that are defined not by the PLRA, but
by the prison grievance process itself." *Jones,* 549 U.S. at 200.  Compliance with
prison (or jail) grievance procedures, therefore, is all that is required by the PLRA
to properly exhaust.  *Id.* at 218 ("The level of detail necessary in a grievance to
comply with the grievance procedures will vary from system to system and claim to

claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

### 1. The WCJ's Grievance Procedures

In support of his motion, the Sheriff relies upon the affidavit of Major Thomas Ring with the Walton County Sheriff's Office. ECF Doc. 81-13. Attached to Ring's affidavit is a general order from the Sheriff which sets out the grievance procedure in place at WCJ during Thompsons' incarceration. *Id.* at 2.

The policy provides that an inmate ***must*** file a grievance within five (5) days of their first knowledge of the incident. Section VIII.A (emphasis added). WCJ personnel have fifteen (15) days to respond. Section VIII.B. The inmate also ***must*** appeal the denial of a grievance to the Director or the Bureau Chief within five (5) days of receipt of the decision. Section VIII.C (emphasis added). Additionally, under the policy an inmate may grieve any matter "relating to the conditions of care and supervision within the authority of the Walton County Jail" and is intended to promote "administrative settlement of grievances" and "internal resolution of problems." *Id.* at 4. The WCJ grievance procedure, thus, was applicable to the claims Thompson raises in this action.

### 2. Thompson's Grievances

The Sheriff also relies on the affidavit of Donald W. Clark, a major at Walton County Sheriff's Office. ECF Doc. 81-14. All the requests, grievances or appeals

filed by Thompson while an inmate at WCJ are attached to Clark's affidavit. ECF Doc. 81-14.

The first grievance relevant to this case is a December 24, 2016 grievance, which was responded to, and denied, by Cindy Weeks. *Id.* at 18-19. In denying the grievance, Weeks stated, "You were caught cheeking your meds. They have been discontinued and Escambia (Dr. Mobley) has been notified. Per Policy at Walton Co. Jail If you are caught cheeking or hoarding your meds they will be discontinued." ECF Doc. 81-14 at 2-3. Thompson also submitted grievances on January 3, 2017 at 9 p.m., 9:07 p.m. and 9:12 p.m.

The first two were directed to ECJ, even though Thompson was at WCJ. *Id.* at 20-21. Thompson complained in both grievances that Nurse Tiller at WCJ had discontinued his medication based on a lie by "somebody that I refused to give my meds to" that he was cheeking his medication. The first request was denied on January 4, 2017 with a response that Thompson should direct his medical questions to medical staff at WCJ, not ECJ. *Id.* The second grievance was also denied because Thompson did not follow the inmate manual and also explained that his medications were stopped by WCJ "[p]er policy … due to [his] actions." *Id.* Thompson was directed to contact WCJ medical staff to get more medications if he needed them.

The January 3rd, 9:12 p.m., medical grievance was directed to the medical staff at WCJ. In it, Thompson stated, "Now for you! You were caught practicing

psychiatry without a license. And its my policy to sue you. Mr. Justice Stephens says you may not interfere with meds once prescribed, stupid...!" Cindy Weeks responded to that grievance on January 10, 2017, by stating that Thompson had been released from the infirmary and set for an appointment with the Walton County Health Department. *Id.* at 22.

Although Thompson grieved Tiller's withholding of medications, those grievances were denied and Thompson did not appeal those denials as he was required to do under the WCJ's grievance procedures prior to filing suit. Moreover, Thompson did not file a grievance relating to the January 4, 2017 incident. Based on the record, Thompson did not exhaust the WCJ's administrative remedies.

Reading Thompsons' third amended complaint liberally, Thompson appears to imply that he did not file timely grievances or appeals because he was unable to do so due to the aftereffects of the withdrawal of his medications. That is, Thompson claims that it was not until a few days after February 2, 2017 that "the incoherent, delusional, and emotionally distraught plaintiff began to realize how severe[ly] his rights had been violated and started seeking a redress of grievance." ECF Doc. 67 at 8. Even though Thompson does not raise this argument in his opposition to the Sheriff's motion for summary judgment, the undersigned nonetheless considered this argument.

When deciding a motion to dismiss or for summary judgment based on a failure to exhaust administrative remedies, the district court can make certain specific factual findings.  *See Turner*, 541 F.3d at 1082.  "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. (citing *Bryant*, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (citing *Bryant*, 530 F.3d at 1373-74, 1376).  "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. (citing *Jones*, 549 U.S. at 216).  "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

Here, the Court specifically finds that the withdrawal of Thompson's medications did not make the grievance procedures unavailable to him.  To the contrary, the record shows that Thompson was sufficiently cognizant to file over a

dozen grievances and requests from December 24 to February 2. As stated above, Thompson filed four (4) grievances on December 24 and January 3 relating to the withdrawal of his medications. The last grievance filed on January 3 specifically referenced that his constitutional rights were infringed upon by the withdrawal of his medications. Thus, regardless of his lack of medication, Thompson was able to express that his "his rights had been violated."

Additionally, Thompson filed nine (9) requests during the 21-day period between January 10 to February 2, 2017. None of them, however, were appeals of the denial of his medications or grievances relating to the self-harm incident that occurred on January 4. Instead, those requests involved issues relating to his foot and dental health, his mail and sophisticated requests for copies of complaints in his cases. The specificity and prevalence of those requests show that Thompson was more than capable of filing grievances or appeals in accordance with WCJ's grievance procedures.

For example, on January 13, he filed a sick call form stating, "I need some ibuprofen for my sciatica & arthritis. Also, some athletic foot cream, and some denture cream. Courtesy of ECJ!!!" ECF Doc. 81-14 at 23. On the same day, Thompson sent a request for his mail: "I was in 7x for over two weeks. I have been expecting important and legal mail. If I have received any mail over this period of time, would you immediately release it to me!!! Thanks!!!" *Id.* at 25.

On January 18, Thompson directed a request to ECJ asking to see a "psych doctor," to which ECJ responded that Thompson should direct questions about his medical issues to WCJ. *Id.* at 26. Then, the same day, he filed a medical request to WCJ seeking to see the psychiatrist to get his complete medications. This was addressed the same day with the response that ECJ had started him on his medications and he needed to wait to let them be in his system for a while. *Id.* at 30. On January 18, he also asked for foot and denture cream a second time. *Id.* at 27.

On January 22, Thompson filed a medical request for denture cleaner, *id.* at 31, and a legal request for copies of his complaints in various cases which he listed. *Id.* at 33. On January 26, he requested glasses, *id.* at 34-35, and on January 30 he complained of cold symptoms. *Id.* at 36.

Clearly, Thompson could have appealed the denial of his medications within five (5) days of December 26, when his first grievance was denied. He did not. Also, he could have filed a grievance at any time from January 10 to February 2 using the kiosk in the common area outside his cell seeking compensation for the injuries he sustained on January 4 that he contends were due to the Sheriff and Nurse Tiller. He did not. He did not exhaust his administrative remedies even though he was clearly able to file nine (9) other requests also using the computerized system at WCJ. Thus, the record makes clear that the WCJ's administrative remedies were available to Thompson.

Accordingly, the undersigned recommends the Sheriff's motion for summary judgment be granted on all claims for Thompson's failure to exhaust his administrative remedies. *See Barnes*, 2018 WL at *2.

## III. THE SHERIFF IS ALSO ENTITLED TO SUMMARY JUDGMENT ON THE MERITS OF THE SUPERVISORY LIABILTY CLAIM

Thompson's failure to exhaust warrants a dismissal of claims, and thus the undersigned need not address the other grounds raised in Defendants' motion for summary judgment. Nonetheless, as discussed below, the undersigned also finds that the Sheriff is entitled to judgment on Thompson's supervisory liability claim on its merits.

### A. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law."

*Redwing Vehicleriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting Anderson, 477 U.S. at 248).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

### B. Plaintiff's Supervisory Liability Claim Against Sheriff Adkinson

Thompson seeks to hold Adkinson (and Tiller) liable for violating his Fourteenth Amendment rights for withholding his psychiatric medications. Generally, deliberate indifference to a prisoner's serious medical needs is a violation of the Eighth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285,

291, 50 L.Ed.2d 251 (1976). However, the Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and unusual punishment, governs Thompson's claim because he was a pretrial detainee at the time he was at the WCJ. *Snow ex rel. Snow v. City of Citronelle, Ala.,* 420 F.3d 1262, 1268 (11th Cir.2005). The standards under the Fourteenth Amendment are identical to those under the Eighth. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.,* 402 F.3d 1092, 1115 (11th Cir.2005).

To prove deliberate indifference a prisoner must shoulder three burdens. First, he must satisfy the objective component by showing that he had a serious medical need. *Bozeman v. Orum,* 422 F.3d 1265, 1272 (11th Cir.2005) (per curiam). Second, he must satisfy the subjective component by showing that the prison official acted with deliberate indifference to his serious medical need. *Id.* Third, as with any tort claim, he must show that the injury was caused by the defendant's wrongful conduct. *See Hale v. Tallapoosa County,* 50 F.3d 1579, 1582 (11th Cir.1995). In this case, the undersigned finds that, without regard to the first or third element, Thompson cannot meet the second element of his claim.

Supervisory officials like the Sheriff cannot be "liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)). Instead,

"[s]upervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). "A plaintiff may establish a causal connection by showing that: (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he failed to do so; (2) the supervisor's improper custom or policy led to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (alterations, citation, quotations omitted).

In this case, Thompson alleges in his third amended complaint that the Sheriff is liable in his official capacity for "willfully hold[ing] and execut[ing] an unwritten policy, practice, and/or custom to unlawfully deny and interfere with plaintiff's medical treatment once prescribed." ECF Doc. 67 at 9. As the Sheriff points out, however, based on Thompson's deposition testimony as well as his opposition, there is no "unwritten policy," with which Thompson takes issue. Instead, Thompson seeks relief for an abuse by Nurse Tiller of a written policy that allows WCJ officials to discontinue an inmate's medication if evidence exists that the inmate attempted

to "palm, cheek or hold any medication," rather than digest it.  ECF Doc. 80 at 12, ECF Doc. 81-3 at 1-2 (Ex. C to Thompson's depo).  Indeed, Thompson executed an acknowledgment of this policy when he arrived at WCJ.  *Id.*

Thompson alleges that Nurse Tiller wrongfully used this policy to discontinue his medications on the false pretense that he was "cheeking" them.  Thompson further alleges that he has been damaged by such use of the policy and thus should be able to recover against the Sheriff.  Thompson's argument, however, fails for several reasons.  First, he admits the policy is objectively reasonable.  ECF Doc. 101 at 19.  Thompson acknowledges in his deposition that prison officials would be concerned about an inmate cheeking mediation "because some people do - - do illegal things with - - with medication like sell them and all that."  ECF Doc. 81-1 at 22 (Thompson depo, p. 52, lines 13-15).

Second, he alleges that Nurse Tiller abused the policy for her own personal reasons.  Third, he has provided no evidence that the Sheriff was aware of a history of abuse by Nurse Tiller or any other WCJ employee of this policy.  Even in his allegations, Thompson limits the abuse of the policy to "interfere[nce] with Plaintiff's medical treatment."  ECF Doc. 67 at 9.

As stated above, to prove that Sheriff Adkinson violated his constitutional rights, Thompson must show that the Sheriff personally participated in the alleged constitutional violation, such as where he failed to correct a widespread pattern of

constitutional violations or adopted a custom or policy that violated Thompson's constitutional rights. *See Keith v. DeKalb Cty, Ga.*, 749 F.3d 1034, 1049 (11th Cir. 2014). Here, it is not the policy to discontinue medication for cheeking that violated Thompson's constitutional rights, it was Tiller's alleged abuse of that policy. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1116 (11th Cir. 2005) (explaining that sheriff's policies or customs must themselves evidence a deliberate indifference to, and therefore a subjective awareness of, a substantial risk of serious harm).

The Eleventh Circuit addressed a similar argument in *Goebert v. Lee Cty*, 510 F.3d 1312, 1332 (11th Cir. 2007). In that case, the plaintiff's official capacity claim against the sheriff relies on the Lee County Jail's policy of not permitting inmates to lie down during the daytime without a pass coupled with the staff's failure to issue such passes when medically necessary. The Eleventh Circuit affirmed summary judgment in favor of the sheriff on a claim of supervisory liability, finding that the policy at issue was a reasonable one and one that was "not facially constitutional." *Id.* at 1332.

The plaintiff's claim in that case, like Thompson's claim here, "in effect, is that this facially constitutional policy was implemented in an unconstitutional manner—one that ignored medical needs." *Id.* In affirming summary judgment on the merits, the Eleventh Circuit stated that: "Our decisions establish that supervisory

liability for deliberate indifference based on the implementation of a facially constitutional policy requires the plaintiff to show that the defendant had actual or constructive notice of a flagrant, persistent pattern of violations." *See id.*

Also, like the plaintiff in *Goebert*, Thompson presents no evidence that he had any direct contact with the Sheriff. Thompson also presents no evidence that false accusations of cheeking was a widespread problem or that the Sheriff was aware that employees routinely violated the policy and failed to correct the problem. *See id.* Thompson's third amended complaint is bare of any facts relating to the Sheriff's knowledge or personal participation. His complaint alleges only one instance where the policy was abused, by Tiller, and that is concerning his medications.

Other than in paragraph 10 of his third amended complaint, where he seeks to hold the Sheriff liable as the "policy-maker" and "Chief Jail", for an "unwritten policy," he only references the Sheriff in one other place in his statement of claims, and that is in paragraph 13 when he alleges that "Michael Atkinson, and, Nurse Tiller, did, while acting under the color of state law, use their badge of authority to deny, withhold, and interfere with plaintiff's life-saving psychiatric medication once prescribed by a licensed psychiatrist." ECF Doc. 67 at 10. That statement is conclusory, is devoid of any supporting facts, and is insufficient to meet Thompson's burden under the summary judgment standard. *See Bennet v. Parker*, 898 F.2d 1530, 1534 (11th Cir. 1990) (conclusory allegations or evidence setting forth legal

conclusions are insufficient to meet plaintiff's burden to establish a genuine issue of material fact as to an element of his claim).

Thompson argues in his opposition that while the policy is "objectively reasonable," "it is highly unreasonable if the jail has no trained and qualified mental health personnel." ECF Doc. 101 at 19. Presumably, Thompson's support for this position comes from the allegation in his opposition that Dr. Sheppard[9] who saw Thompson after the suicide attempt and who also signed a form discontinuing his medications for cheeking, "was a 82-year-old semi-retired medical doctor/ veterinarian who came out of retirement to stand in as a medical director for Walton County Jail" and is not qualified or licensed to practice psychiatry.[10] ECF Doc. 101 at 12. This allegation has no factual support, and even when taken as true, is contradicted by Thompson's position that his medications were discontinued by Nurse Tiller because he stopped selling or trading medications with inmate, Red. And, again, Thompson has offered no evidence that the Sheriff knew of Dr. Sheppard's alleged incompetency; that there was a widespread problem with Dr.

---

[9] Plaintiff initially named Sheppard as a defendant in this action, but omitted Sheppard as a defendant in his third amended complaint.

[10] The undersigned considered the allegations in Thompson's opposition because the opposition was accompanied by a sworn declaration that the representations in his opposition are "true and correct to the best of [his] knowledge." ECF Doc. 101-1 at 44; *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (at the summary judgment stage, this Court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the [defendants'] motion for summary judgment, and sworn affidavit attached to that response").

Sheppard, or that there was a widespread problem of other inmates having their medications wrongfully withheld.

Also, by failing to present any evidence to show that the Sheriff was subjectively aware of Tiller's (or any other employee's) abuse of the objectively reasonable policy, Thompson's claim necessarily fails as no reasonable juror would find that the Sheriff was deliberately indifferent to Thompson's medical needs. *See Keith*, 749 F.3d at 1049; *see also, Gaines v. Choctaw Cty. Com'n.*, 242 F.Supp. 2d 1153, 1165 (S.D. Ala. 2003) (Plaintiffs' claims against the Sheriff based on his supervisory liability, however, lack any allegation to support the subjective component necessary to state a deliberate indifference claim. Put simply, there is no assertion that the Sheriff was on notice that the policies—(1) failure to train jail personnel regarding medical care of prisoners and (2) giving jail personnel discretion whether to dispense prescription medication—were deficient. Therefore, plaintiffs have failed to state a claim for supervisory liability.).

## IV.   PLAINTIFF'S FAILURE TO EFFECT TIMELY SERVICE ON NURSE TILLER

Although Thompson added Nurse Tiller as a defendant to this action when he filed his second amended complaint on or about November 5, 2018, she has not been served with process. Thus, the undersigned recommends dismissal of the claims against Tiller under Federal Rule of Civil Procedure 4(m). Additionally, because

Thompson's failure to exhaust his administrative remedies also bars his claims against Tiller, dismissal is warranted on that ground as well. *See* Escobar v. Crosby, 363 F. Supp. 2d 1361, 1366 (S.D. Fla. 2005) (noting dismissal of prisoner's claims against unserved defendants was appropriate based on both the prisoner's failure to effect timely service under Federal Rule of Civil Procedure 4(m) and his failure to exhaust administrative remedies).

On December 13, 2019, the Court gave Plaintiff until January 3, 2020, to serve Nurse Tiller. ECF Doc. 100. Prior to that order, the Court and the United States Marshal's Service ("USMS") had made significant efforts to locate and serve Nurse Tiller, with the latest attempt to serve also being unsuccessful on November 19, 2019. ECF Doc. 97.

The Court has requested that the USMS serve Nurse Tiller at the Walton County Jail at two different locations, based on information provided by Thompson. See ECF Docs. 57, 58, and 65. In each instance, the summons was returned unexecuted with a notation that Tiller is not employed at the jail or was never employed at the jail. ECF Doc. 87. The USMS also attempted service on Tiller at a confidential address, which was also returned unexecuted. ECF Doc. 97.

Federal Rule Civil Procedure 4(m) provides, "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that

defendant or order that service be made within a specified time." *Richardson v. Johnson*, 598 F.3d 734, 738-40 (11th Cir. 2010). In this case, despite Nurse Tiller having been added as a defendant to this action now more than two (2) years ago, service on Nurse Tiller remains outstanding. The Court has thus exhausted its efforts to serve Nurse Tiller and Thompson has also been unable to provide a service address for Tiller.[11] Therefore, the undersigned recommends that the action against Nurse Tiller be dismissed for failure to effect timely service.

## V.    CONCLUSION

Accordingly, it is respectfully RECOMMENDED:

1.    That the Sheriff's motion for summary judgment, ECF Doc. 80, be GRANTED.

2.    That the case against Nurse Tiller be DISMISSED.

3.    That the Sheriff's motion to dismiss, ECF Doc. 71, be denied as MOOT

4.    That the clerk be directed to close the file.

At Pensacola, Florida, this 15th day of January, 2020.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

---

[11] Thompson filed a notice of dismissal as to Nurse Tiller because the Court had been unsuccessful in serving her (ECF Doc. 92) and then moved to withdraw that notice (ECF Doc. 95) after the Court made a third service attempt on Tiller (ECF Doc. 89).

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.